United States District Court
Eastern District of Wisconsin
Milwaukee Division

---

LaSharle Borg
2466 North 47th Street
Milwaukee, WI 53210

   Plaintiff,

v.              Case No.

Shorewest Realtors, Inc.
17450 West North Avenue
Brookfield, WI 53008

   Defendant.

---

## COMPLAINT

---

NOW COMES THE PLAINTIFF, LaSharle Borg, by her counsel, Urban & Taylor, S.C. and Salawdeh Law Office, LLC, as and for claims against the Defendant, alleges and shows to the Court as follows:

## INTRODUCTION

1. This civil rights action seeks damages and is brought under 42 U.S.C. § 1981, for discrimination in the terms and conditions of Plaintiff's contract as a Real Estate Agent with Defendant and for retaliation for raising complaints of discrimination. Plaintiff, LaSharle Borg, alleges that during the term of her contract as a Real Estate Agent with Defendant, she was denied the opportunity to receive the more lucrative corporate relocation referrals because of her race,

1

African-American. When Ms. Borg raised complaints about the discriminatory treatment, Ms. Borg was retaliated against as she sought to terminate her contract with Defendant. Ms. Borg brings this action to remedy violations of her right to contract without discrimination based on her race and without retaliation.

## **PARTIES**

2. Plaintiff, LaSharle Borg, is an adult resident of the State of Wisconsin and is currently residing at 2466 North 47th Street, Milwaukee, WI 53210. At all times relevant, LaSharle Borg has been a licensed real estate agent in the state of Wisconsin.

3. Defendant, Shorewest Realtors, Inc. (hereinafter "Shorewest" or "Defendant"), is a domestic corporation. At all relevant times, Defendant, Shorewest Realtors, Inc. has continuously been doing business in the State of Wisconsin.

## **JURISDICTION AND VENUE**

4. This action arises under 42 U.S.C. § 1981. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

5. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. §1391 as, upon information and belief, Defendant's principal corporate offices are located within the District and the facts giving rise to this cause of action occurred in this District.

## **EVENTS**

6. In January, 2006, LaSharle Borg began working as a Real Estate Agent for Defendant.

7. Ms. Borg quickly distinguished herself as a Defendant Real Estate Agent. By the end of her first year, Ms. Borg, upon information and belief, was in the top five percent of all Real Estate Agents in the Multiple Listing Service (MLS) as quantified by both the number of units sold and the total dollar amount sold. Ms. Borg was also recognized as the Defendant Rookie of the Year based on the total dollar amount sold.

8. In January, 2008, Ms. Borg approached her Shorewest Regional Sales Director, Rick Bohmann, to discuss becoming certified for Defendant's Corporate Relocation Program.

9. Defendant has a very vibrant and successful Corporate Relocation Program, which receives referrals from companies relocating employees to the Milwaukee area. These referrals are highly sought after by Shorewest Agents and can be quite lucrative.

10. A Defendant Agent may become eligible for the Corporate Relocation Program if the Agent has sold at least two million dollars worth of real estate within each of the previous two years and has obtained a certification by attending a seminar.

11. Mr. Bohmann agreed with Ms. Borg that she would be an excellent candidate for receiving corporate relocation referrals.

12. Mr. Bohmann personally introduced Ms. Borg to Shorewest's Corporate Relocation Team in January or February of 2008, at which time Ms. Borg was told she would be placed on the roster of agents eligible to receive corporate relocation referrals.

13. Although Ms. Borg made numerous inquires during 2008 about receiving corporate relocation referrals, Ms. Borg did not receive a single corporate relocation referral in 2008. The following year, Ms. Borg was recognized as one of Shorewest's top outgoing referral agents for outgoing corporate referrals.

14. Upon information and belief, Caucasian Defendant Agents who had been less successful than Ms. Borg received corporate relocation referrals in 2008, 2009, and 2010.

15. In the Spring of 2009, during a relocation certification class, Ms. Borg asked Joan Schuelke, a Defendant's Homefinding Account Manager, why she had not received any corporate relocation referrals. Ms. Schuelke responded that Shorewest "hadn't had anybody who wants to live down in the city."

16. In Ms. Borg's tenure with Defendant, she has sold numerous properties across Milwaukee County, including Lake Drive, and in the suburbs of Waukesha and Ozaukee Counties.

17. Ms. Borg understood Ms. Schuelke to mean that she believed Ms. Borg could only sell real estate to African Americans.

18. In September 2009, Ms. Borg met with Mr. Bohmann and Nancy Brennan, Defendant Associate Vice President, regarding the discrimination Ms. Borg was facing with not receiving relocation referrals and other ways in which she was discriminated against as a Defendant Real Estate Agent. Ms. Borg followed this meeting up with an email to Mr. Bohmann and Ms. Brennan. She also sent a copy of the email to Mr. Ted Dentice.

19. In the Fall of 2009, after he received the email sent by Ms. Borg, Ms. Borg met with Ted Dentice, Defendant Vice President, who was, at all relevant times, upon information and belief, responsible for the Corporate Relocation Team. Ms. Borg again asked why she was not receiving any corporate relocation referrals. Mr. Dentice responded, "You know we profile agents – perhaps you do not fit the profile."

20. Ms. Borg understood that the only difference between her profile and the profile of the other Agents who did receive corporate relocation referrals was that she is African-American and the other Agents are Caucasian.

21. Prior to these meetings, Ms. Borg had received only one corporate relocation referral in 2009. The referral was a single African-American woman seeking to purchase a condominium for approximately $130,000. Upon information and belief, the average selling price for a relocation property is $350,000.

5

22. In October, 2010, Ms. Borg filed a complaint of discrimination based on race with the Equal Employment Opportunity Commission against Defendant for failure to assign her corporate relocation accounts.

23. In October, 2010, within days after filing the discrimination complaint, Ms. Borg received her only other corporate relocation referrals. They were for three renters and one buyer. The commission on a rental referral is $300.00. Upon information and belief, the average commission for a buyer referral is $4,700.00.

24. Upon information and belief, since 2008, other Caucasian Defendant agents, who produce far less in terms of commissions and sales, have received substantial corporate relocation referrals.

25. Ms. Borg terminated her contract with Shorewest on March 21, 2011, because she continued to not receive any corporate relocation referrals.

26. Upon leaving, Defendant refused to close down Ms. Borg's email account/address for approximately one month. At the same time, Ms. Borg no longer had access to the email account.

27. Therefore, many of Ms. Borg's clients and potential clients were sending emails to Ms. Borg and receiving no response. This caused Ms. Borg, upon information and belief, to lose business.

28. Defendant also threatened Ms. Borg's clients in predominantly Caucasian neighborhoods with a lawsuit if they were to break their contract with Defendant and continue to work with Ms. Borg. Defendant, upon information and

6

Case 2:11-cv-00986-LA   Filed 10/21/11   Page 6 of 10   Document 1

belief, did not make similar threats to Ms. Borg's urban clients and released them from their contracts without question.

29. A similarly situated Caucasian Real Estate Agent left Defendant at about the same time as Ms. Borg to start her own Real Estate business. When this Agent left, upon information and belief, Defendant released all of her clients from their contracts without any problems, immediately shut down her email, and wished her well in her new business.

## **FIRST CAUSE OF ACTION**
**Discrimination Under Section 1981**

30. Plaintiff restates and realleges paragraphs 1 through 29 as paragraph 30 of this first cause of action.

31. By virtue of the foregoing, Defendants have discriminated against Plaintiff on the basis of her race, African-American, by failing to provide her with the corporate relocation referrals provided to other Caucasian Defendant agents in violation of 42 U.S.C. § 1981.

32. As a result of this violation, Plaintiff has suffered emotional distress, humiliation, degradation, and other damages both pecuniary and non-pecuniary in nature.

33. Defendant's conduct complained of herein was intentional, willful, malicious, oppressive, wanton and heedlessly in disregard of Plaintiff's rights and, accordingly, Plaintiff is entitled to recovery of punitive damages from Defendant.

## SECOND CAUSE OF ACTION

### Retaliation Under Section 1980

34. Plaintiff restates and realleges paragraphs 1 through 29 as paragraph 34 of this second cause of action.

35. By virtue of the foregoing, Defendants have retaliated against Plaintiff for raising complaints about discrimination in the assignment of relocation referrals, both internally and to the EEOC, in violation of 42 U.S.C §1981.

36. As a result of this violation, Plaintiff has suffered emotional distress, humiliation, degradation, and other damages both pecuniary and non-pecuniary in nature.

37. Defendant's conduct complained of herein was intentional, willful, malicious, oppressive, wanton, and heedlessly in disregard of Plaintiff's rights and, accordingly, Plaintiff is entitled to recovery of punitive damages from Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their employees, officers, successors, assigns, divisions, and all persons in active concert or participation with them, from engaging in any

employment practices which constitute discrimination on the basis of race;

B. Order Defendants to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices;

C. Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices, including, but not limited to, lost wages, benefits and medical expenses;

D. Order Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices, including injury to professional reputation, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation;

E. Order Defendants to pay Plaintiff punitive damages for its malicious and/or reckless conduct, in an amount to be determined at trial;

F. Order Defendants to pay interest on the amount described above, calculated at the prevailing rate;

G. Award Plaintiff her costs, litigation expenses and any reasonable attorney's fees in this action;

H. Post judgment interest; and

I. Grant further action as the Court deems necessary, just and proper.

**JURY TRIAL DEMAND**

Plaintiff requests a trial by jury.

Dated at Milwaukee, Wisconsin this 21st day of October, 2011.

    URBAN & TAYLOR s.c.

    s/ Scott B. Taylor
    Scott B. Taylor
    4701 North Port Washington Road
    Milwaukee, Wisconsin 53212
    Telephone: 414-906-1700
    Facsimilie: 414-906-5333
    Email: staylor@wisconsininjury.com


    SALAWDEH LAW OFFICE, LLC

    s/ Rebecca L. Salawdeh
    Rebecca L. Salawdeh
    7119 W. North Avenue
    Wauwatosa, WI 53213
    Telephone: 414-455-0117
    Facsimile: 414-918-4517
    Email: rebecca@salawdehlaw.com