# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LaSHARLE BORG,**
          **Plaintiff,**

     v.                                               Case No. 11-CV-00986

**SHOREWEST REALTORS, INC.,**
          **Defendant.**

## DECISION AND ORDER

Plaintiff LaSharle Borg brings this action alleging employment discrimination and retaliation against defendant Shorewest Realtors, Inc. under 42 U.S.C. § 1981. Before me now is defendant's motion for summary judgment.

## I. FACTS AND BACKGROUND

Defendant is a real estate broker serving Eastern Wisconsin. In January 2006, plaintiff commenced work as an independent real estate agent working out of defendant's Elmbrook/Wauwatosa ("EW") office which serves the City of Milwaukee's western suburbs. Independent agents are generally responsible for generating their own business, but defendant can supplement their business with corporate relocation referrals, i.e. referrals of clients seeking to buy or sell a home because of relocation for a job. An agent can receive such referrals if she has at least two years experience and $2 million in sales the previous year.

During her first year with defendant, plaintiff was named "Rookie of the Year" based on the volume of her sales. By the beginning of 2008, she had satisfied the requirements for receiving corporate relocation referrals. She informed Rick Bohmann, the EW office

sales manager, that she was interested in receiving such referrals, and he introduced her to Joan Schuelke and Kate Ernst in the relocation office. Ernst referred potential sellers of homes and Schuelke referred potential buyers. Ernst and Schuelke interviewed plaintiff informally and added her to the list of qualified relocation agents.

Six months later, on August 22, 2008, plaintiff received a seller referral from Ernst of clients Michael and Sandra Brown. Plaintiff received this referral because the Browns, who were plaintiff's clients, had requested her. They only went through the relocation office because their corporate relocation package required it. Plaintiff closed the deal but made several mistakes including listing the house late and failing to complete necessary paperwork. As a result, Ernst decided not to refer any more clients to plaintiff. Plaintiff attributes the mistakes to the fact that it was her first referral and that she had to learn new procedures. Ernst told Schuelke about the matter, but Schuelke states that she did not let Ernst's comments affect her opinion of plaintiff, preferring to see for herself how plaintiff performed.

In Spring 2009, defendant began requiring agents handling corporate relocation referrals to attend formal training. Plaintiff attended the first training session along with about 175 other agents. At the session, plaintiff asked Schuelke why she had not received any response to her emails and voice mails asking for more referrals. Plaintiff states that Schuelke responded that she did not have "anyone who wanted to live down in the city." (Def.'s Proposed Findings of Fact ¶ 54, ECF No. 23.) Plaintiff found this comment odd because Schuelke knew that plaintiff's primary service area was in the suburbs not the City. Shortly after the training, on March 9, 2009, plaintiff received her first referral generated by the relocation office, a buyer referral from Schuelke of client Cassandra

2

Jenkins, who wanted to purchase a lower-priced condo in the City. Jenkins is African American although Schuelke apparently did not know this when she made the referral because she interviews clients over the phone. Plaintiff assisted Jenkins in purchasing a condo for $169,900. The average price of a sale through the relocation department is $300,000.

Plaintiff received no referrals over the next six months. So, in September 2009, she spoke with Bohmann, Nancy Brennan, assistant sales director for the EW office, and Ted Dentice, defendant's vice president and general sales manager. Plaintiff pointed out that she was ranked #2 in the EW office and #11 company wide and that she had earned membership in defendant's National Sales Club, Executive Club and President's Club based on her success as an agent. She also noted that she was the only African American who had earned membership in any of these clubs and expressed a concern that she might be the victim of race discrimination. Dentice reassured her that she was a valued agent and suggested that perhaps plaintiff did not "fit the profile" for the incoming referrals. (Compl. ¶ 19, ECF No. 1.) "Profile" is a term commonly used in the real estate industry to refer to an agent's qualifications and experience. Dentice said he would talk to the relocation office to see if it could direct more business to plaintiff. After these meetings, plaintiff received two rental referrals, one in October 2009 and a second in November 2009. An agent receives a flat fee of $300.00 per day for taking clients on rental tours and rental tours usually last one day. Defendant claims that the October referral was for a buyer who turned into a renter, but plaintiff insists that the client, Michael Andress, always wanted to rent. In June and August 2010, plaintiff received two additional rental referrals. In

3

summer 2010, plaintiff also turned down a rental referral and a buyer referral because she was out of town.

In October 2010, since she was still not receiving many referrals, plaintiff contacted Joe Horning, defendant's president. She also filed a complaint with the Equal Employment Opportunity Commission, and on October 23, 2010, informed Bohmann about it. Dentice asked the relocation department to give plaintiff its next good referral. On October 26, 2010, Schuelke referred to plaintiff Roger and Nancy Phillips, who wanted to purchase a home worth between $250,000 and $325,000. She helped them purchase a home worth $320,000. In November 2010 and January 2011, Schuelke gave plaintiff two more rental referrals, and, on February 25, 2011, a buyer referral. The buyer was Matthew Beveridge, who sought a house worth around $600,000. However, plaintiff states that she received this referral only because Beveridge's company requested her. In March 2011, plaintiff decided it would be more profitable to work with a different broker and terminated her contract with defendant.

## II. DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a defendant's motion for summary judgment, I view the evidence in the light most favorable to the plaintiff and may grant the motion only if no reasonable juror could find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). Plaintiff alleges that defendant discriminated against her by failing to provide her with corporate relocation referrals and retaliated against her when she complained about

4

discrimination. She brings this action under § 1981, which prohibits racial discrimination that limits a person's right to enjoy the "benefits, privileges, terms, and conditions of [a] contractual relationship." 42 U.S.C. § 1981(a)–(b). Because plaintiff was an independent contractor and not an employee, she does not assert a Title VII claim. *See Taylor v. ADS, Inc.*, 327 F.3d 579, 581 (7th Cir. 2003). However, "the elements and methods of proof for § 1981 claims are 'essentially identical' to those under Title VII." *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (quoting *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010)).

I will grant defendant's motion with respect to plaintiff's retaliation claim as plaintiff does not argue in support of it. To survive defendant's motion on the discrimination claim, plaintiff must offer proof of discrimination using either the indirect or direct method of proof. *Id.* Under the indirect method, plaintiff can establish a prima facie case by showing that: (1) she is a member of a protected class, (2) she was qualified for the benefit she sought, (3) she was denied that benefit, and (4) another similarly situated individual who is not in the protected class was treated more favorably. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). If plaintiff establishes a prima facie case, a presumption of discrimination arises and defendant must "'articulate some legitimate, nondiscriminatory reason' for its action." *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If defendant does this, plaintiff must present evidence suggesting that defendant's reason is pretextual. *Id.* "Pretext 'means a lie, specifically a phony reason for some action.'" *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)).

5

Plaintiff is a member of a protected class and has presented sufficient evidence to enable a reasonable juror to conclude that she was qualified to receive corporate relocation referrals. Although plaintiff made mistakes on her first corporate relocation referral, she did not repeat them, and Schuelke testified that she was a "great agent" who "could do a great job." (Dep. of Joan Schuelke, pp. 154–55, ECF No. 40-22.) Bohmann also described plaintiff as "extremely competent," and plaintiff earned membership in several exclusive clubs based on her success as an agent. (Add'l Proposed Findings of Fact ¶¶ 85, 171, ECF No. 43.) Plaintiff has also presented evidence that defendant provided her with very few corporate relocation referrals. Thus, the key question is whether a similarly situated individual outside the protected class was treated more favorably.

Plaintiff offers Kathy Cox, a Caucasian agent working out of the EW office, as a comparator. Generally, to show that someone was similarly situated, a plaintiff must show that the person: (1) "'dealt with the same supervisor,'" (2) "'[was] subject to the same standards,'" and (3) "'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (quoting *Snipes v. Ill. Dept. of Corrs.*, 291 F.3d 460, 463 (7th Cir. 2002)). A reasonable juror could find that plaintiff has met this burden with respect to Cox. The record shows that Cox, like plaintiff, was not a real estate agent before she began working with defendant, was hired just two months after plaintiff, worked out of the same office, repeatedly expressed an interest in receiving corporate relocation referrals and received referrals from the same relocation team.

6

Cox also appears to have been treated more favorably than plaintiff. Between January 2008 and March 2011, Cox received 26 corporate relocation referrals generated by the relocation office,[1] while plaintiff received only 10.[2] The disparity between Cox's referrals and plaintiff's appears even greater when one considers the type of referrals each received. Cox received 23 buyer referrals, two seller referrals and one rental referral, while plaintiff received three buyer referrals, no seller referrals and seven rental referrals.[3] Defendant contends that a rental referral had the same value as a buyer or seller referral, but there is evidence that indicates otherwise. While a rental referral means a guaranteed payment of $300.00, a buyer or seller referral holds the potential for a much larger commission. And Schuelke appears to have recognized this when distributing referrals. Schuelke states that she thought highly of Cox, and she gave Cox 23 buyer referrals and only one rental referral. Additionally, when asked to give plaintiff the next "good," "high-end" referral in October 2010, Schuelke gave plaintiff a buyer referral. (Def.'s Proposed Findings of Fact ¶¶ 95–97.)

Defendant offers three explanations for the different treatment of plaintiff and Cox. First, defendant argues that Cox received more referrals because she was willing to do candidate tours whenever Schuelke asked. These are tours for people who are in town for

---

[1] This number does not include the four buyer referrals that Cox received because the buyers requested her. These referrals were generated by Cox herself.

[2] Here, I include the buyer and rental referrals that plaintiff turned down in summer 2010, but exclude the buyer referrals for the Browns and Beveridge because those parties requested plaintiff.

[3] I count the Andress referral as a rental referral because plaintiff states that it was clear he never intended to buy.

7

interviews but who have not yet been offered a job. Five or six of Cox's buyer referrals directly resulted from such tours, and Schuelke states that she gave Cox other referrals because Cox did several candidate tours that did not result in a commission. The problem with this explanation is that neither Schuelke nor anyone else ever asked plaintiff to do a candidate tour. Schuelke apparently assumed plaintiff would be unwilling to do one, but there is no evidence to support this assumption. Second, defendant argues that Cox received more referrals because she made herself visible to the relocation office by stopping by to say "hi" from time to time. A reasonable juror could find this explanation to be pretextual because the evidence suggests that plaintiff also made herself visible and regularly expressed interest in receiving referrals. Third, defendant argues that Cox received more referrals because she was a great agent who received positive feedback from her clients. However, a reasonable juror could also find this explanation to be pretextual. Defendant relies on Schuelke's testimony about Cox, but Schuelke also testified that plaintiff was a great agent.

Thus, using the indirect method of proof, plaintiff survives defendant's motion for summary judgment. Defendant argues that comparing only plaintiff and Cox is misleading because the majority of the certified relocation agents in the EW office received fewer relocation referrals than plaintiff. Defendant presents evidence indicating that 19 other agents in the EW office were certified to handle corporate relocation referrals between January 2008 and March 2011, and that 16 of them received fewer referrals than plaintiff. These agents were all Caucasian as plaintiff was the only African American relocation agent in the office. Defendant is correct that plaintiff cannot establish a prima facie case of discrimination by cherry-picking comparators and ignoring those who were treated less

8

favorably than her. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008) (citing *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 845–46 (7th Cir. 2006)). However, plaintiff does not appear to be doing this. Plaintiff has established that Cox had similar real estate experience, achieved a similar level of success and repeatedly expressed interest in receiving relocation referrals. The record contains no evidence that the other agents that defendant points to were similar to plaintiff in these ways.[4]

Plaintiff has also presented enough evidence to proceed under the direct method of proof. Under the direct method, plaintiff must show that she is a member of a protected class, that she suffered an adverse action and that there is a causal connection between the two. The parties agree that plaintiff is a member of a protected class and that she received few corporate relocation referrals. The question is whether a reasonable jury could infer a causal connection between the two. To establish causation, plaintiff must either show that defendant admitted to discriminating or construct "'a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'" *Brown*, 700 F.3d at 1104 (quoting *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006)). Circumstantial evidence can include: 1) "'suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of

---

[4] Because I conclude that Cox is an adequate comparator, I need not address plaintiff's claim that Jack Smith, Jerry Plato, Kate Kenlay and Chris McIntosh, four Caucasian agents who worked in different offices, were also similarly situated and treated more favorably. *See Humphries*, 474 F.3d at 406–07 ("A single comparator will do; numerosity is not required.").

9

discriminatory intent might be drawn,'" 2) "'evidence . . . that similarly situated employees were treated differently,'" and 3) "'evidence that the employer offered a pretextual reason for an adverse employment action.'" *Coleman*, 667 F.3d at 860 (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011), *Volovsek v. Wis. Dept. of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003), and *Dickerson v. Bd. of Trustees of Comm. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)).

Plaintiff presents sufficient circumstantial evidence to enable a reasonable jury to infer discrimination. First, as discussed, plaintiff has presented evidence that shows that Cox, a similarly situated Caucasian agent, was treated more favorably. Second, Schuelke's 2009 remark that plaintiff was not receiving any relocation referrals because Schuelke had no one who wanted to live "down in the city" could be seen as evidence of bias. Plaintiff's primary service area was the suburbs not the City, and this comment could be viewed as expressing the belief that plaintiff's natural milieu was lower-income African Americans who reside in the City rather than wealthier whites who reside in the suburbs. The fact that Schuelke referred to plaintiff a woman looking for a lower-priced condo in the City just a few days later could be seen as supporting this inference, especially since this was the only referral Schuelke gave plaintiff in her first year and a half as a relocation agent. Defendant argues that Schuelke's comment was a stray remark that cannot be used to prove racial animus. However, a remark can be evidence of discrimination if it was "(1) made by the decisionmaker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Egonmwan v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 845, 850 (7th Cir. 2010). Schuelke's comment meets these criteria.

10

Third, plaintiff presents evidence showing that the only other African American agent certified to handle relocation referrals, Martrio Reed, had similar problems with the relocation office. Reed started working as an independent agent out of defendant's downtown office in December 2003. She states that initially 40 to 45% of her business was based on referrals but that her referrals dried up after Schuelke joined the relocation team in April 2006. Defendant claims Reed stopped getting referrals because she became the assistant manager of defendant's downtown office and could only receive limited referrals while in that position. However, Reed only held that position from April 2007 until November 2008, yet in 2009 and 2010 the relocation office only generated nine relocation referrals for her, five of which were for renters.[5] When Reed asked why she was receiving so few referrals, Ernst said she would not give Reed seller referrals because Reed had been unavailable to accept a referral on one occasion, and Schuelke said she did not have anything coming through for Reed. Between 2008 and 2011, Jan Leisten, a Caucasian agent in the downtown office who Reed had helped train in 2007, received at least 12 relocation referrals, all of which were for buyers and sellers.[6] Reed says that she became

---

[5] Five of Reed's referrals were corporate relocation referrals for renters and four were broker-to-broker referrals for buyers. A broker-to-broker referral is a referral that comes from another broker and not a corporation or third-party corporate relocation company.

[6] Neither party discusses Leisten's referrals in detail, so it is unclear whether Leisten's referrals were corporate relocation referrals or broker-to-broker referrals. However, plaintiff has submitted a list of referrals that indicates that each referral for Leisten was for either an "incoming buyer" or an "incoming seller." (Aff. of Scott Taylor, Exh. 18, pp. 8–13, ECF No. 40-18.)

frustrated with the lack of referrals in early 2011 and terminated her contract with defendant.[7]

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for summary judgment (Docket #22) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to file additional proposed findings of fact (Docket #34) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 27th day of June 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[7] Plaintiff argues that Dentice's suggestion that she might not "fit the profile" for incoming referrals is evidence of discrimination. However, this contention does not appear to be supported by the facts. Plaintiff admits that "profile" is a term commonly used in the real estate industry to describe an agent's qualifications and experience. Moreover, Dentice does not appear to have been involved in the distribution of referrals.